Frank BONIN, Charles Meador, Linnea A. Priestner, Kenneth Buck, Plaintiffs,

v.

William GANNON et al., Defendants.

Civ. No. 79–931.

United States District Court,
M. D. Pennsylvania.

May 22, 1980.
As Modified Sept. 29, 1980.

David L. Kurtz, Wilkes-Barre, Pa., for plaintiffs.

W. Marshall Dawsey, Towanda, Pa., Robert L. Knupp, Harrisburg, Pa., for defendants.

## OPINION

MUIR, District Judge.

### I. Introduction.

Bonin and others filed this action on behalf of themselves and others similarly situated pursuant to 28 U.S.C. §§ 1331, 1343, 2201, and 42 U.S.C. § 1983 seeking injunc-

tive and declaratory relief and alleging that the Defendants, William Gannon, Everett Hubbard, and Benny Larnard, Bradford County Commissioners, who sit on the Bradford County Board of Assessment Appeals and August G. Neidhardt, Chief Assessor, have not properly notified members of the purported class of changes in their real property assessments for 1979 tax purposes as required by Pennsylvania's Fourth to Eighth class county code, in 72 P.S. §§ 5453.602 and 5453.701. On April 2, 1980, the Plaintiffs' motion for class certification was denied as untimely. On April 3 and 4, the Court, sitting without a jury, held a hearing on the merits of this case. On April 9, 1980, Defendants filed a brief in support of their contention that this action is barred by the Tax Injunction Statute, 28 U.S.C. § 1341. Plaintiffs filed a brief in opposition to the Defendants' position on April 22, 1980. The following represent the Court's findings of fact, discussion, and conclusions of law.

## II. Findings of Fact.

1. Defendants, William Gannon, Everett Hubbard, and Benny Larnard are the Commissioners of Bradford County.

2. Pursuant to the Pennsylvania Fourth to Eighth Class County Assessment Code, 72 P.S. Sec. 5453.101 et seq., the above-named Defendants also sit as the Board of Assessment Appeals of Bradford County which is the entity authorized to establish assessments of all real property situate in the County of Bradford for the purpose of real property taxation.

3. All Plaintiffs are owners of parcels of real estate in Bradford County.

4. Plaintiffs own their parcels together with other parties in some form of joint ownership.

5. During 1976, the Defendants and their employees and agents conducted a county-wide reassessment in Bradford County resulting in changes of assessments for approximately 32,000 parcels of property.

6. In August of 1977, Defendants mailed change of assessment notices to all Bradford County real property owners. The assessment figure contained on said assessment notice represented 50 percent of the fair market value of the real property assessed.

7. The assessment notices sent in August of 1977 were accompanied by a separate notice stating that the assessment ratio was 50%.

8. The notice that the assessment ratio was 50% was inserted by Automated Valuation Services, the independent contractor performing the basic valuation of properties, and was inserted without the knowledge of or by the authority of the Defendants.

9. The change of assessment notices sent to Bradford County real property owners in August of 1977 were sent by the Defendants to notify Bradford County real property owners of the change in their assessment for 1978 tax purposes.

10. Although the Defendants had notified Bradford County real property owners that the assessment ratio for 1978 tax purposes was 50%, the assessment ratio ultimately used for tax purposes for 1978 and prior years was 30%.

11. The County was enjoined by the Bradford County Court of Common Pleas from using the 1977 assessments because the assessment notices and the ratio adopted were untimely.

12. On or about July 27, 1978, Defendants acting as the Board of Assessment Appeals, adopted a new assessment roll for 1979 real property tax purposes and years subsequent thereto which incorporated the changed real property assessments contained in the county wide reassessment.

13. On July 25, 1978, Defendants acting as the Board of Assessment Appeals pursuant to 72 P.S. § 5453.602(a) established real property assessments based upon a predetermined ratio of 25% of the properties' actual fair market value and placed the changed assessments on the new assessment roll for 1979 tax purposes.

14. The minutes containing the new assessment ratio are public records.

15. The notices of changed assessments sent by the Defendants to Bradford County real property owners in July of 1978 for 1979 tax purposes did not notify the Bradford County real property owners of the ratio of assessment to fair market value of their real property.

16. In June or July of 1978, Plaintiffs received certain notices of their official tax assessments pursuant to the Fourth to Eighth Class County Assessment Law, Act of May 21, 1943, P.L. 571 Art. I, 72 P.S. § 5453.101 et seq.

17. Plaintiffs did not find on any assessment notice received from the Bradford County Board of Assessment Appeals in 1978 any indication of the percentage of fair market value represented by the assessment of the parcels involved.

18. All forms of assessment notices issued in 1978 provided Plaintiffs with a notice of a change of assessment, a notice of the old assessment, and a notice of the new assessment.

19. The reverse side of the 1978 assessment notices for 1979 tax purposes stated that any person aggrieved by the assessment could appeal to the Board of Assessment Appeals for relief and also stated that forms for appeal could be obtained from the Bradford County Board of Assessment Appeals in the County Courthouse at Towanda, Pennsylvania.

20. Each Plaintiff has sought relief by appealing to the Board of Assessment Appeals, either for the taxes involving the tax year 1978 or the tax year 1979.

21. Information concerning the assessment ratio of 25% for the tax year 1979 was widely disseminated throughout Bradford County by various means, including but not limited to, press and other media.

22. Numerous newspaper discussion of the 25% assessment ratio occurred before and after the assessment notices for 1979 tax purposes were mailed to the public.

23. The notices of changed assessments sent by the Defendants to Bradford County real property owners in July of 1978 for 1979 tax purposes did not notify the Bradford County real property owners that the assessment ratio had changed from 30% in 1978 and prior years thereto to 25% in 1979.

24. On July 27, 1978 the Defendant-Commissioners caused the tax roll to be advertised in accordance with the requirement of the Fourth to Eighth Class County Assessment Law found in § 604 of that Act, 72 P.S. § 5453.604.

25. The assessment roll was advertised as being open for public inspection.

26. The assessment roll itself contained notification of the 25% assessment ratio.

27. The minutes of the public meeting of July 25, 1978, containing the adoption of the 25% assessment ratio by the Defendants are public records and were available for public inspection during regular office hours.

### III. Discussion.

In the amended complaint, Plaintiffs sought declaratory and injunctive relief as well as attorney's fees and costs. On August 1, 1979, this case was originally on the Court's August, 1979, trial list for preliminary injunction purposes. Because a motion to dismiss as well as one for certification of appeal pursuant to 28 U.S.C. § 1292(b) was filed, the matter was not reached in August, 1979. The case was placed on the November trial list. On October 31, 1979, a motion for continuance filed by some Defendants was granted because those Defendants had not yet been served with Plaintiffs' amended complaint filed on October 1, 1979. The action was placed on the January, 1980 trial list. On January 31, 1980, the action was placed on the March, 1980 list because the case was not reached in January and the month of February was allocated to a multiple Plaintiff prisoner case and a murder trial. By the time the above-captioned case reached trial, Plaintiffs no longer asserted their request for injunctive relief. Plaintiffs contend that the Defendants have failed to comply with 72 P.S. §§ 5453.602 and 5453.701 in that the notice of assessment which was sent to them in the summer of 1978 failed to indicate that the assessed value represented

25% rather than 30% of the fair market value of their property. Plaintiffs assert that 72 P.S. § 5453.602 requires that proper notice of the change in the ratio be given. They appear to argue that such notice must be given in the notice issued pursuant to § 5453.701. Defendants, on the other hand, submit that they fully complied with § 5453.601 and § 5453.701.

The Defendants submit that the Court must dismiss the above-captioned case because the Tax Injunction Act, 28 U.S.C. § 1341, deprives this Court of jurisdiction over this action. 28 U.S.C. § 1341 provides that a district court "shall not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state law where a plain, speedy and efficient remedy may be had in the Courts of such state." Although only the issue of declaratory relief is now pending before the Court, the Defendants note that a Tax Injunction Act applies to requests for relief under the Declaratory Judgments Act, 28 U.S.C. § 2201. *See Aluminum Co. of America v. Department of Treasury of Michigan*, 522 F.2d 1120 (6th Cir. 1975); *see also Hickmann v. Wujick*, 488 F.2d 875, 876 (2d Cir. 1973). Furthermore, Defendants argue that the Tax Injunction Act applies to civil rights suits pursuant to 28 U.S.C. § 1343. *Hickmann v. Wujick*, 488 F.2d 875 (2d Cir. 1973). There is no need for the Court to discuss the authorities cited by the Defendants because the Plaintiffs concede that the Tax Injunction Act can bar actions for Declaratory Judgment relief as well as in civil rights actions. However, the Plaintiffs take the position that no plain, speedy and efficient remedy exists in state court for them and as a result the Tax Injunction Act cannot bar their claims.

Plaintiffs contend that it is clear that Pennsylvania courts will not entertain equity jurisdiction over actions challenging the illegality of real property assessments. *See Garrett v. Bamford*, 538 F.2d 63 (3d Cir.) *cert. denied*, 429 U.S. 977, 97 S.Ct. 485, 50 L.Ed.2d 585 (1976). The Court is in agreement with Plaintiffs at least to the extent that *Garrett v. Bamford*, 538 F.2d 63 (3d Cir. 1976) indicates at 70 that there is "sub-stantial uncertainty as to a Pennsylvania equity forum" for a challenge to an assessment method. Plaintiffs take the position that their only state remedy is that provided by 72 P.S. §§ 5453.701, 5453.702, and 5453.704. Because Plaintiffs argue that they were not aware of the change in valuation of their real property, they were denied the opportunity to avail themselves of the prescribed statutory method for challenging improper assessments. Noting that they had been informed of the assessment ratio for 1978 tax purposes of 50%, they submit that it was incorrect for the Bradford County Commissioners not to inform them that the assessment ratio for 1979 tax purposes had been changed from 30% to 25%.

In assessing whether a plain, speedy or efficient remedy existed for the Plaintiffs, the Court first notes that the test is whether a plain, speedy and efficient remedy *ever* existed for the Plaintiffs. The fact that a remedy may not be available under state law because of the passage of time does not render the remedy insufficient under 28 U.S.C. § 1341. *See Sacks Brothers Loan Company, Inc. v. Cunningham*, 578 F.2d 172 (7th Cir. 1978); *Aluminum Company of America v. Department of Treasury of State of Michigan*, 522 F.2d 1120 (6th Cir. 1975); *Lung v. O'Cheskey*, 358 F.Supp. 928 (D.N.Mex.), *aff'd*, 414 U.S. 802, 94 S.Ct. 159, 38 L.Ed.2d 39 (1973); *Ford Motor Credit Company v. Louisiana State Tax Commission*, 440 F.2d 675, 677 (5th Cir. 1971); *Klotz v. Consolidated Edison of New York, Inc.*, 386 F.Supp. 577, 587 (S.D.N.Y.1974).

Plaintiffs have brought this action based on their allegations that the Defendants have violated their constitutional rights in depriving them of their due process rights as secured by the Fifth and Fourteenth Amendments to the United States Constitution. *See ¶ 7 of Section VII of the amended complaint. The Plaintiffs have not invoked the Court's pendant jurisdiction and therefore state law claims are not before this Court. In deciding whether there exists a plain, speedy and efficient remedy available

to Plaintiffs to redress their constitutional claims, the Court must look to the nature of those claims.

In *Bishop v. Wood*, 426 U.S. 341, 344, n.7, 96 S.Ct. 2074, 2077, n.7, 48 L.Ed.2d 684 (1976), the United States Supreme Court, citing *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) stated that a property interest may not be derived from the due process clause itself but must be created and defined by some independent source such as state law. It is the Court's view that the property right involved in the above-captioned case is the right to retain money unless it is taken by properly imposed taxes. The Act of July 31, 1968, P.L. 1036, No. 315, as amended by the Act of July 9, 1976, P.L. 852, No. 150, 72 P.S. § 5453.701(a), provides in pertinent part that a notice of change of assessment "shall state that any person aggrieved by such change or by any assessment, may appeal to the board for relief by filing with the board on or before the first day of September, a statement in writing of such intention to appeal, designating the assessment or assessments by which such person is aggrieved, and the address to which notice of when and where to appear for a hearing of the appeal shall be mailed."

■ It is clear to the Court that the Defendants have literally complied with this appeal notice. Exhibits showing the notices of change in assessment sent to the Plaintiffs demonstrate that the Plaintiffs were informed of (1) the change in assessment, (2) the amount of the old assessment and (3) the amount of the new assessment. Most significant, however, is that the notices sent to the Plaintiffs informed them of their right to appeal assessments of their land. The statutory scheme provided a means to appeal assessments to the board and to the courts ultimately. *See* 72 P.S. §§ 5453.701 and 5453.704. Since the Court of Common Pleas has the power to hear appeals of anyone feeling aggrieved by an assessment if that person has properly utilized the statutory remedies, it appears to the Court that it cannot grant Plaintiffs any more relief than a state court. *See*

*Garrett v. Bamford*, 582 F.2d 810, 817 (3d Cir. 1978). The Fourth to Eighth County Code does provide a plain, speedy and efficient remedy to vindicate the right to due process of these individual Plaintiffs.

■ The Plaintiffs in their amended complaint and at trial apparently have tried to persuade the Court to read into the notice requirement that portion of the Act of May 21, 1943, P.L. 571 § 602 as amended, 72 P.S. § 5453.602(a) which requires in pertinent part that "real property shall be assessed at a value based upon an established pre-determined ratio, *of which proper notice shall be given*, not exceeding 75 per centum (75%) of its actual value . . ." (emphasis supplied). It is the view of the Court that this argument of Plaintiffs must be rejected for a number of reasons. First, the quoted portion of § 5453.602 cannot fairly be read into the requirements of § 5453.701. There is absolutely no case authority in Pennsylvania for reading the statutes that way. § 5453.701 does not explicitly require that the assessment change notice state the ratio of the assessed value to fair market value. Thus, it is the view of the Court that the Defendants did not violate § 5453.701.

Second, it may be that the Defendants have violated § 602 in that they may not have given "proper notice" of the change of assessment ratio. Defendants submit that they have complied with § 5453.602 and in particular note that the minutes of the Bradford County Commissioners indicating that assessment ratio had been set at 25 per cent was attached to the cadastre. Notice of the cadastre's availability for inspection was published in several newspapers. Further, Defendants suggest that they have complied with § 5453.602(a) by satisfying the notice requirements set forth in § 5453.604. However, the Court need not reach that issue. The issue before the Court is whether the Plaintiffs have been deprived of a property interest without due process of law. Because the property interest involved in the above-captioned case is money possessed or at one time possessed by the Plaintiffs, the Court must focus upon

whether the Plaintiffs have available to them the plain, speedy and efficient remedy to vindicate that interest. Clearly, at one time the parties had the ·right to appeal pursuant to 72 P.S. § 5453.701, et seq. This Court has found by finding of fact No. 19 that the change in the assessment value notices sent to the Plaintiffs informed them of such right. Thus, they were aware or should have been aware of the existence of the plain, speedy or efficient remedy for redress of their constitutional claims. *See Tully v. Griffin, Inc.*, 429 U.S. 68, 97 S.Ct. 219, 50 L.Ed.2d 227 (1976). As a result, the Tax Injunction Act, 28 U.S.C. § 1341, bars this suit.

It may be that the Plaintiffs contend that the Defendants had an obligation to comply with the "proper notice" provisions of 72 P.S. § 5453.602(a) independent of the requirements of 72 P.S. § 5453.701. Although this theory was not clearly presented at trial by the Plaintiffs, such that the parties focused on it to any extent, it is the Court's view that it merits some discussion.

The ratio at which the actual value of the property was reflected by the assessed value is not in the Court's view intimately related to the tax actually imposed on the land. Taxes are computed on the basis of assessed value multiplied by the applicable millage. Lack of notice of the changes in an assessment ratio and thus the absence of an opportunity to appeal such a change does not involve any property interest. If a person had had a complaint about the amount of money actually imposed as a tax, he would challenge the assessed value or the millage, not the assessment ratio. The Court is not persuaded that the provisions of § 5453.602(a) in themselves created a property interest. That section merely provides that a procedural process for assessing the land and by itself does not furnish a protectable property interest. *See Lake Michigan Federation of Teachers v. Lake Michigan Community College*, 518 F.2d 1091 (6th Cir. 1975), *cert. denied*, 427 U.S. 904, 96 S.Ct. 3189, 49 L.Ed.2d 1197 (1976); *Suckle v. Madison General Hospital*, 499 F.2d 1364 (7th Cir. 1974); *see also Pugliese v. Nelson*, 617 F.2d 916 (2d Cir. 1980); *Cofone v. Manson*, 594 F.2d 934 (2d Cir. 1979).

Although the Court is not persuaded by the contention that § 5453.602(a) creates a property interest, it is arguable that the lack of knowledge of the assessment ratio could involve a property interest because the taxpayer might wish to dispute the amount of his taxes if he were aware of the actual assessment ratio. For example, if a taxpayer believed that the assessment ratio were 30%, he might have no quarrel with an assessed value of $10,000. However, if the assessed value were $10,000, but the assessment ratio were in fact 25%, he might take the position that his property has been overvalued and as a result he is paying taxes at too high a rate. The Court has noted above that it is not persuaded that the requirement of proper notice under § 5453.602 must be given along with the other notice requirement in § 5453.701. However, § 5453.602 does require that proper notice of an assessment ratio be given. Thus, the Court's inquiry here is whether the Defendants have complied with § 5453.602.

No Pennsylvania cases that have been called to the Court's attention or that the Court has discovered through its own research discuss the meaning of "proper notice" under 72 P.S. § 5453.602(a). The Plaintiffs appear to argue that such notice must be given in the form of notice required for changes in assessments by § 5453.701. The Court has already rejected this argument. Defendants suggest that compliance with 72 P.S. § 5453.604 satisfies the requirements of § 5453.602(a). Section 5453.604 provides that an assessment roll will be open to public inspection during certain hours. Although this Court has found that the Defendants gave notice by publication of the availability of the assessment roll for inspection, that notice did not indicate that the assessment ratio was also available for inspection. Commissioner Gannon did testify that the minutes containing the assessment ratio were public records. However, Defendants did not prove that notice of that fact was made available. To be sure, an examination of the assessment roll even without an exami-

nation of the minutes containing the ratio would have ultimately disclosed the assessment ratio. 72 P.S. § 5453.603 requires that the assessment will contain among other things the value of each parcel or tract of real property. See 72 P.S. § 5453.603(e). Using the assessed value and the actual value set forth in the assessment roll, the assessment ratio could easily be calculated. Nevertheless, this is not direct notice of the assessment ratio.

■ Thus, it is the Court's task to determine what is meant by "proper notice" in § 5453.602(a). As noted before, no Pennsylvania cases have construed this phrase under this statute. It is the Court's view that proper notice requires such notice as is reasonably calculated to inform the public of the assessment ratio. See generally Armour Transportation Co. v. Pennsylvania P. U. C., 138 Pa.Super. 243, 250, 251, 10 A.2d 86 (1939). Plaintiff Bonin testified that there were numerous newspaper discussions of the 25% assessment ratio, both before and after the assessment notices were mailed to the public. Commissioner Gannon also testified that the ratio was common knowledge through the media. Although Bonin indicated that there was some uncertainty as to the applicability of the ratio because two different notices of assessment were received, it is clear to the Court that Bonin and the other Plaintiffs received notice of the 25% assessment ratio. The basis for the Court's conclusion is that on August 11, 1978, a suit was filed in the Court of Common Pleas of Bradford County at No. 78–25(e), equity term, 1978, challenging the absence of the 25% assessment ratio in the assessment notices sent to taxpayers. Plaintiffs' brief filed on August 20, 1979 in opposition to the motion to dismiss states in pertinent part that "[r]ealizing that the notices sent to taxpayers did not fully nor properly notify them of the extent of the increase of their property valuations, the named Plaintiffs filed a second action before the state equity court to enjoin Defendants from taxing the entire class of Bradford County property owners based upon an assessment of which they received no meaningful notice." Brief at page 1.

(emphasis supplied). Thus, it is the Court's conclusion that the named Plaintiffs, Frank Bonin, Charles Meador, Linnea Priestner, and Kenneth Buck, had actual notice of the 25% ratio. Although Mrs. Priestner testified that she did not learn of the 25% ratio until the Summer of 1979, the fact that her brief in opposition to the Defendants' motion to dismiss states that she filed suit protesting the 25% ratio belies her statement.

■ In their brief in opposition to Defendants' motion to dismiss this action because of the Tax Injunction Act, Plaintiffs contend that in Pennsylvania when notice in a particular manner is prescribed by a statute, that method of notice is exclusive. See Elfman, Point Bar, Liquor License Case, 212 Pa.Super. 164, 240 A.2d 395 (1968); Gramley v. City of Williamsport, 66 Pa.D. & C.2d 495 (1974). In Elfman, the liquor code required that an enforcement officer of the Board notify the licensee of the nature and date of an alleged violation within 10 days. Although the licensee was aware of the alleged violation, no notice had been given by an enforcement officer or the Board. As a result, the Court held that the notice given was ineffective. In Gramley, an appeal from a decision of the Board of Health was held to be timely because the alleged violators had not been given notice of the Board's decision as required by statute. In the above-captioned case, the statute only requires that "proper notice" be given. The method of notice is not set forth. It is the Court's view that proper notice is given if the parties are made aware of the assessment ratio by means of a reliable method of communication. The appearance in the newspaper of a number of articles regarding the change of assessment ratio is in the Court's view proper notice. Because the Court of Common Pleas has the power to hear an appeal from the Board regarding any assessment, it appears to the Court that a disagreement with the assessment ratio could also be addressed in such an appeal. "Proper notice" in the Court's view does not require that notice of the manner in which the assessment ratio

could be challenged be set forth with the notice of the ratio because Plaintiffs and other taxpayers would have been aware or should have been aware of their right to appeal from their tax assessment. The assessment notices indicated that any person aggrieved by the assessment could appeal to the Board of Assessment Appeals. Thus, the Court concludes that state law provided a plain, speedy and efficient remedy for the deprivation of the property right alleged here. Consequently, the above-captioned case must be dismissed for lack of jurisdiction in this Court.

For the foregoing reasons the Court makes the following

### IV.   Conclusions of Law.

1. The Defendants have complied with 72 P.S. § 5453.701.

2. The Plaintiffs have a plain, speedy and efficient remedy under state law by which to address the constitutional violations alleged by them.

3. The Court lacks jurisdiction over the above-captioned case.